# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 10, 2013 Session

## DAVID NEAL DAVIS v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Rutherford County
#### No. F-68033        Don R. Ash, Judge

---

### No. M2012-02643-CCA-R3-CD - Filed March 27, 2014

---

Petitioner, David Neal Davis, was indicted by the Rutherford County Grand Jury on four counts of aggravated sexual battery and one count of attempted aggravated sexual battery. The trial ended in a mistrial. Petitioner was subsequently charged in a superseding indictment with two counts of rape of a child, eight counts of aggravated sexual battery, solicitation of a minor, and attempted aggravated sexual battery. Petitioner was convicted of rape of a child, attempted rape of a child, seven counts of aggravated sexual battery, two counts of child abuse, and one count of attempted solicitation of a minor. *See State v. David Neal Davis*, No. M2009-00691-CCA-R3-CD, 2011 WL 1631828 (Tenn. Crim. App., at Nashville, Apr. 19, 2011), *perm. app. denied*, (Tenn. Aug. 31, 2011). He was sentenced to an effective sentence of twenty years. His convictions and sentence were affirmed on appeal. *Id.* at *1. Among other things, Petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel. After a lengthy post-conviction hearing, the post-conviction court denied relief, finding that Petitioner failed to show clear and convincing evidence that he received ineffective assistance of counsel or that he was otherwise entitled to post-conviction relief. Petitioner appeals, arguing that the post-conviction court improperly denied relief where trial counsel was ineffective for: (1) requesting a mistrial; (2) failing to adequately investigate the case, including failing to call certain witnesses at trial; (3) failing to request mental health records of the victim; (4) failing to use the prior recorded statement of the victim at trial; (5) failing to object to testimony regarding evidence of other crimes not charged in the indictment; (6) failing to properly cross-examine the mother of the victim; and (7) failing to object to the State's usage of the video interview of Petitioner. Additionally, Petitioner complains that the post-conviction court improperly determined that one of Petitioner's issues was not proper for post-conviction relief and that the cumulative effect of all the errors at trial did not violate Petitioner's rights. After a thorough review of the record, we determine Petitioner failed to establish that he is entitled to post-conviction relief. Consequently, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE MCMULLEN, JJ., joined.

Luke A. Evans, Murfreesboro, Tennessee, for the Appellant David Neal Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William Whitesell, District Attorney General, and Laural A. Hemenway, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

*Factual Background*

The factual basis for Petitioner's conviction is taken from this Court's opinion on direct appeal, as follows:

> David Neal Davis, was originally indicted by the Rutherford County Grand Jury on four counts of aggravated sexual battery and one count of attempt to commit aggravated sexual battery. In a trial on these charges, [Petitioner] moved for a mistrial, after the victim testified that she had been digitally penetrated by [Petitioner]. The trial court granted [Petitioner's] motion for a mistrial. In a superceding indictment, [Petitioner] was indicted on two counts of rape of a child, eight counts of aggravated sexual battery, one count of solicitation of a minor, and one count of attempted aggravated sexual battery. Following a jury trial on these charges, [Petitioner] was convicted of rape of a child, attempted rape of a child, seven counts of aggravated sexual battery, two counts of child abuse, and one count of attempted solicitation of a minor. He was sentenced by the trial court to an effective sentence of twenty years confinement . . . .
>
>     . . . .
>
> At [the] trial commencing on April 8, 2008, the victim testified that [Petitioner] rubbed her between her legs. She also testified that "he slipped his finger into my private areas. And it went in and it hurt." [Petitioner] requested a jury-out hearing following the victim's testimony of penetration.

During the jury-out hearing, the State explained that at the time of the indictment, it did not have evidence of penetration. Defense counsel argued that the State was presenting proof of "another crime for which [Petitioner]'s not indicted," and that it was "highly improper" for the victim "to be allowed to testify" that [Petitioner] sexually penetrated her. The trial court agreed with defense counsel and recognized that there was a "problem" because "this is making it appear that he's guilty of rape when he hadn't been charged with rape." The State suggested that any confusion could be clarified by a jury instruction. The State also argued, "we can go back and reindict for an A-felony if he chooses to do that. If we go forward on this, if he's found not guilty or guilty, he can never be charged with an A-felony on these facts because that's been waived by the state." Defense counsel stated, "Fine. Then you indict him on whatever you choose to." The State informed defense counsel that "for post-conviction purposes" it wanted to make "absolutely clear" that if [Petitioner] received a mistrial, the State would re-indict for rape of a child. The State also intimated that it could re-indict [Petitioner] for the incidents that happened when the victim was six years old. The State argued that defense counsel would have the opportunity to cross-examine the victim as to why she had not testified before the grand jury regarding any penetration. Defense counsel argued that cross-examining the victim on the issue of penetration would only take a "bad situation" and make it "a worse situation." The State responded that, "It can't be worse if there can't be no [sic] conviction on it. Now, if we go back and reindict, there can be a conviction."

*Id.* at *1, 8.

The day after the mistrial, Petitioner was charged in a superseding indictment with two counts of rape of a child, eight counts of aggravated sexual battery, solicitation of a minor, and attempted aggravated sexual battery. Trial counsel represented Petitioner at the subsequent trial. At the subsequent jury trial, the victim was fourteen years old. The victim testified about each incident of abuse, and stated that the abuse started in kindergarten and continued through seventh grade. *Id.* at *1-3. The victim was interviewed by both a social worker and a forensic interviewer during the investigation. *Id.* at *4. The victim's mother testified at trial about the victim's disclosure of abuse, her confrontation of Petitioner, and her decision to report abuse to authorities. *Id.* at *5. Petitioner was interviewed by Amy Dean of the Murfreesboro Police Department. He denied the allegations of abuse. *Id.*

Petitioner testified at trial and denied ever touching the victim in a sexual manner and denied ever digitally penetrated the victim. *Id.* at *6. Petitioner also called multiple character witnesses. *Id.*

At the conclusion of the second trial, Petitioner was convicted of rape of a child, seven counts of aggravated sexual battery, two counts of child abuse, and one count of attempted solicitation of a minor. As a result, he was sentenced to an effective sentence of twenty years. *Id.* at *1.

*Evidence at the Post-conviction Hearing*

At the post-conviction hearing, Lisa Dupree, a forensic social worker at Our Kids Center, testified. She performed an evaluation of the victim in 2006. She noted that the victim made allegations against Petitioner six years prior but that they were determined to be unfounded. Ms. Dupree did not recall any specific meetings or conversations with Petitioner's trial counsel. Ms. Dupree stated that the victim reported details of the abuse and described digital penetration "maybe one time."

Maureen Sanger, a psychologist at Our Kids Center, also testified. She interviewed the victim in late 1999 and early 2001 about allegations that Petitioner "touched or kissed her private area." Ms. Sanger recalled that there were inconsistencies in the victim's reports of the incidents that led her to conclude there was not certainty that the victim had been sexual abused. At the time of this interview, the victim's mother expressed doubt as to the truthfulness of the allegations. Ms. Sanger did not recall being asked to testify at the trial related to the investigation from 2006.

Amy Dean, an officer with the Murfreesboro Police Department, was in charge of two separate investigations involving Petitioner and the victim. The first investigation ended without formal charges. The second investigation started after a referral from the Department of Children's Services and a determination that "enough information" existed to begin an intervention by the child abuse team. The interview was, according to Officer Dean, "not that detailed." Officer Dean did not recall an initial complaint of digital penetration but recalled that it was reported during the forensic interview.

Officer Dean explained that she discussed the charges with the prosecutor, and they initially agreed not to charge rape of a child based on their initial assessment of the facts and their perception of the probability of what they could prove at trial. Officer Dean explained that, after the mistrial, "circumstances changed" and the case went back to the grand jury.

Officer Dean spoke with trial counsel prior to trial about the investigation. Officer Dean testified that she did not signal the victim during her trial testimony. In fact, she stated she "would not in any way make any motions to distract . . . a person on the witness stand whatsoever."

-4-

Petitioner's brother-in-law, Dale Rose, testified that he was not contacted by counsel for Petitioner prior to trial. He did, however, testify at the sentencing hearing. Mr. Rose testified that he observed Petitioner interact with the victim on multiple occasions and never noticed any unusual behavior.

Eleanor Rose, Petitioner's sister, was not asked to testify at trial. She did, however, testify at the sentencing hearing. Mrs. Rose testified that she observed Petitioner interact with the victim appropriately. She also supervised visitation between Petitioner and all his children and never saw any inappropriate behavior.

Barry Dillard, a friend of Petitioner, was not asked to testify at trial. Petitioner and Mr. Dillard had a business relationship and personal relationship.

Patricia Forster, Petitioner's sister, testified that she talked to trial counsel prior to trial. She was asked to be a character witness at the trial. Mrs. Forster had contact with Petitioner, the victim, and the victim's mother during the time that the abuse occurred. Mrs. Forster described the victim as a typical child.

Amanda Rogers testified at the trial of Petitioner. Ms. Rogers was the niece of Petitioner and acted as a babysitter to the victim. The victim was even a flower girl in Ms. Rogers's wedding. She described the relationship between the victim and Petitioner as normal. Ms. Rogers was approved to assist during the supervised visits that occurred with Petitioner and his children but discontinued her involvement after Petitioner's ex-wife threatened to "shoot" her. She informed trial counsel about this incident.

Neal and Melissa Davis, Petitioner's children, also testified at the post-conviction hearing. Mr. Davis was a witness at the sentencing hearing but claimed that he did not talk to trial counsel until the day of trial. Mr. Davis recalled that Petitioner treated the victim like "any dad would treat his kid." Mr. Davis did not notice any change in the victim's behavior from before the first allegations in 2001 to the time of the allegations that led to the trial. Ms. Davis testified that she visited Petitioner and his family "pretty often" and would also describe Petitioner's relationship with the victim as "normal."

Ms. Davis talked with trial counsel prior to trial but would not describe any of those conversations as "in-depth." Ms. Davis recalled testifying at trial, mostly about how she knew Petitioner's ex-wife.

Robert Barkley, one of Petitioner's co-workers, testified at trial. Mr. Barkley recalled that Petitioner and his ex-wife had a contentious relationship even before they were married. Mr. Barkely talked to trial counsel prior to trial but was afraid that the prosecution knew

more about Petitioner's witnesses than trial counsel. In fact, he disagreed with other family members who testified that the family was "normal."

Trial counsel represented Petitioner at both the trial ending in mistrial and the second trial. He testified that he had tried at least a dozen cases of this nature prior to Petitioner's trial. He did not recall any specific disputes with regard to discovery leading up to the trial. Specifically, trial counsel noted that he reviewed the 2001 report from Ms. Sanger "more times than [he] could count." Trial counsel had Ms. Sanger under a subpoena but did not call her as a witness after the victim's own mother testified at trial and managed to impeach the victim's credibility consistently with her account in Ms. Sanger's report. Additionally, trial counsel chose not to subpoena Ms. Dupree because he did not feel that she had any additional evidence that would be helpful to the defense.

Trial counsel testified that he had a list of witnesses that he interviewed either in person or over the phone prior to trial, including Diane Davis, Peggy Raven, James Cavenish, Robert Barkley, David Asanti, Melissa Davis, Amanda Rogers, and Maureen Sanger. Trial counsel also recalled having at least one lengthy conversation with Patricia Foster prior to trial. The majority of the witnesses explained to trial counsel that the relationship between Petitioner and the victim seemed normal. Trial counsel stated that many of the witness at the post-conviction hearing had testified either at the trial or at the sentencing hearing. In fact, trial counsel explained that one of the main defense strategies was to present witnesses at trial that substantiated the proof that the relationship between the victim and Petitioner was normal.

At first, trial counsel stated that he did not receive a copy of the victim's 2001 report or 2006 report from Our Kids. Later, trial counsel admitted that he did receive these documents prior to trial. Trial counsel recalled that he received a video of the victim's DCS interview prior to the first trial. He watched it several times, including at least one time with Petitioner. Trial counsel did not determine that the identity of the interviewer was an important component.

Trial counsel explained that he took multiple steps to investigate the case. He met with various witnesses, talked with Petitioner, obtained a court order to photograph and inspect the marital home, deposed Petitioner's ex-wife as part of the divorce proceeding, and attempted to depose the victim. This request was denied.

Trial counsel denied having knowledge of any allegations of digital penetration prior to the first trial. In fact, he claimed that the charges for aggravated sexual battery had "no reference, innuendo to sexual penetration."

Trial counsel admitted that he did not discuss the possibility of a mistrial with Petitioner prior to trial because it was "almost impossible to discuss ahead of time about what if this happens." However, at trial, when the victim referenced or suggested digital penetration, trial counsel objected. Trial counsel testified that he briefly spoke about the testimony with Petitioner, explaining that it was improper based on the charges in the indictment. Once the victim testified for the third time that there was digital penetration, trial counsel moved for a mistrial. Trial counsel explained the matter was discussed at length in chambers, and Petitioner agreed with and seemed pleased with the mistrial. Trial counsel explained that it was "his call" as "attorney" for his client to move for a mistrial where "[t]he evidence was inconsistent with the indictment." Trial counsel claimed that he was "acting" in his client's "best interest." Trial counsel explained:

> I did not know ultimately what the State would do. I know what the State suggested it may do. [The prosecutor] and I had obviously . . . a heated discussion on the record . . . . Where she said, if you persist in your motion for a mistrial, I'm going to indict him. I will indict him for a Class A felony. My position was, you are the DA. You can indict him for what you choose to. But this is improper.
>
> I moved for the mistrial. And when we left the courtroom, [Petitioner] was in full concurrence. He was completely happy with what happened. Because we on that day prevailed.
>
> [The trial court] agreed with my motion. And the mistrial was granted. It was my call. . . .
>
> I did what I thought was absolutely right based upon the . . . improper evidence being introduced that day. I still think it's right.

Trial counsel thought that if the case proceeded with no mistrial it was almost a guaranteed conviction for aggravated sexual battery. He recognized that the mistrial was a "calculated risk" and that the "worse case scenario" would probably be a new trial with the same charges in a few months. In fact, trial counsel discussed the "high probability" of a second trial and indictment with Petitioner. Trial counsel admitted that he did not anticipate that they would re-indict Petitioner the very next day for a Class A felony.

In response to the superseding indictment, trial counsel filed a motion to dismiss and applications for interlocutory and extraordinary appeals. Once those avenues were exhausted, trial counsel prepped for the retrial. Trial counsel met with Petitioner and

received the names of potential witnesses. He recalled that through all of the preparations, Petitioner "adamantly denied" the allegations.

Trial counsel met with Petitioner's son, Neal Davis, prior to trial. Trial counsel felt that his testimony was somewhat "cumulative" and consistent with what other witnesses stated about the relationship between Petitioner and the victim.

Trial counsel testified that he received a copy of the victim's interview as part of the discovery packet. According to counsel, the video was not played at trial or entered into evidence. Trial counsel could not recall if the video contained inconsistent statements about the events but recalled that the majority of the interview contained "very incriminating" information. Trial counsel recalled being careful during cross-examination of the victim because of her age and the sensitivity of the subject matter. Trial counsel did not recall that there were any material inconsistencies in the testimony during the interview, however, trial counsel acknowledged that the victim did not claim in the interview that she was digitally penetrated.

Trial counsel admitted that the case turned on the credibility of the witnesses. He admitted that he was unaware that the victim was seeing a psychologist but stated that even if he had known about it or requested records, they would have been suppressed as confidential.

Trial counsel stated that the majority of the witnesses who testified at the post-conviction hearing did not offer any new evidence. Trial counsel stated that their testimony was consistent with the evidence that was presented at trial. Additionally, trial counsel stated that he did not talk to Dale or Eleanor Rose prior to trial because Petitioner did not bring them to his attention.

Petitioner testified at the hearing. He claimed that he did not understand the consequences of the mistrial and "would have said no" had he realized that he would be re-indicted for more harsh crimes. Petitioner claimed that he felt forced into accepting the mistrial and that trial counsel never explained that he could be or would be re-indicted.

Petitioner described his relationship with the victim's mother as "volatile." Petitioner agreed that trial counsel had called witnesses at trial that came from the witness list that he provided. Petitioner complained that they were character witnesses rather than factual witnesses. Petitioner also insisted that trial counsel should have asked more questions about the relationships between him and the victim or between him and the victim's mother.

At the conclusion of the post-conviction hearing, the trial court made the following findings: the post-conviction court noted that trial counsel's request for a mistrial in the face of a superceding indictment was not deficient where trial counsel "presumed his client innocent based upon his conversations with his client. And he was protecting his client's rights." The post-conviction court specifically noted that trial counsel objected on three separate occasions during testimony where the victim testified to increased charges and made the decision for the mistrial based on his training and experience. The post-conviction court found it a "sound strategy to make such a motion for mistrial." Additionally, the post-conviction court found that trial counsel was not ineffective for failing to consult with Petitioner prior to moving for a mistrial because Appellant was described as a "bright man," and was present when the discussions about the mistrial took place, and had the opportunity to express his concern to counsel.

Next, the post-conviction court determined that trial counsel was not ineffective for failing to interview witnesses for the defense and produce additional witnesses to testify both about the relationship between the victim and Petitioner and the relationship between Petitioner and his ex-wife. The post-conviction court recounted the testimony of the many witnesses that testified at the post-conviction hearing and noted that many of the witnesses did, in fact, testify at trial, and testified as "character witnesses" on behalf of Petitioner. Further, some of the witnesses testified as to the "normal relationship" between Petitioner and the victim. The post-conviction court deemed it a "strategic decision" for trial counsel to determine the number of people who testified at trial and the extent of their testimony. Additionally, with regard to witness Ms. Sanger, the post-conviction court specifically determined that trial counsel made a strategic decision not to call her as a witness after determining that her testimony would be negative.

The post-conviction court determined that trial counsel was not ineffective for failing to put on proof from a psychologist regarding how a volatile relationship between the victim's mother and Petitioner could have affected the victim. Specifically, the post-conviction court noted that there was "no proof" that would have supported such a theory and that trial counsel made a strategic decision to exclude any proof with this regard.

The post-conviction court determined that trial counsel made a strategic decision by not seeking mental health records for the victim. The court noted that trial counsel is "not required to try to find things that are not admissible."

The post-conviction court also determined that trial counsel did not fail to effectively cross-examine the victim based on her prior statements regarding abuse. Specifically, the post-conviction court referred to the videotape of the interview of the victim during which the victim expressed some "inconsistencies" with regard to her accounts of abuse. However,

the court noted that the videotape also contained statements that "would bolster" the victim's testimony. In other words, the court ruled it a strategic decision of trial counsel based on adequate preparation for the case.

As to Petitioner's claim that trial counsel failed to object to evidence of other crimes not charged in the indictment on numerous occasions, the post-conviction court determined that this issue "could have been brought up on appeal" and did not go to ineffective assistance of counsel.

The post-conviction court determined that there was no proof that trial counsel did a poor job of cross-examining Susan Stoner.

The post-conviction court determined that trial counsel was not ineffective for failing to object to the State's introduction of the video interview because the video was never introduced at trial.

Additionally, the post-conviction court determined that trial counsel was not ineffective for failing to address allegedly inappropriate conduct by a detective in the presence of the jury, specifically when the detective "shook her head." The post-conviction court noted that the trial court was notified and the jury was admonished. Petitioner complains that trial counsel should have requested a curative instruction but the post-conviction court found that the failure to do so did not "fall[] below the standard of doing a good job as an attorney."

The post-conviction court determined that it was not ineffective for trial counsel to fail to call the forensic interviewer who interviewed the victim as a witness. The court noted that Petitioner did not produce this witness at the post-conviction hearing and determined that trial counsel was not ineffective in this regard.

The post-conviction court determined that Petitioner failed to meet his burden to establish that trial counsel was ineffective for failing to call an expert witness to testify about accepted methods of interviewing children about abuse because the videotape of the interview was never introduced at trial and there was no proof that the interviewer did anything improper.

The post-conviction court also noted that trial counsel was not ineffective for failing to interview the therapist with whom the victim was meeting. Specifically, the post-conviction court noted that there was no proof that anyone knew that the victim was going to therapy and, in any event, the information could have been privileged.

Lastly, the post-conviction court denied Petitioner's claim with regard to any claim that the State failed to provide the report from DCS or Our Kids despite the fact that trial counsel initially claimed that he did not receive the report because the record reflects that the State provided it to defense.

Petitioner appeals the order of the post-conviction court.[1]

*Ineffective Assistance of Counsel*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has

---

[1] We note on appeal that the timeliness of the notice of appeal was waived in this case in the interest of justice.

-11-

"determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Looking at Petitioner's allegations, we note that Petitioner makes various claims on appeal, including complaints that the post-conviction court: (1) improperly denied post-conviction relief on the basis that trial counsel was ineffective "due to his unreasonable request for a mistrial and failure to consult with Petitioner prior to requesting a mistrial;" (2) improperly denied post-conviction relief on the basis that trial counsel was ineffective for failing to properly investigate the case, including failing to interview and call witnesses for the defense; (3) improperly denied post-conviction relief on the basis that trial counsel was ineffective for failing to request mental health records of the victim at trial; (4) improperly denied post-conviction relief on the basis that trial counsel was ineffective for failing to use the prior recorded statement of the victim; (5) improperly denied post-conviction relief on the basis that trial counsel was ineffective for failing to object to testimony of other crimes not charged in the indictment; (6) improperly denied post-conviction relief on the basis that trial counsel was ineffective in investigating and cross-examining the victim's mother; (7) improperly denied post-conviction relief on the basis that trial counsel as ineffective in his failure to object to the State's usage of the video interview of Petitioner; (8) improperly denied post-conviction relief on the basis that an objection to counsel's failure to address the conduct of a spectator was not a proper issue for post-conviction relief; (9) improperly denied post-conviction relief on the basis of cumulative error.

## I. First Trial

### A. Failure to Explain Consequences of Mistrial

First, Petitioner complains that he should have been granted post-conviction relief where trial counsel asked for and was granted a mistrial in his first trial. Specifically, Petitioner complains that trial counsel did not explain the consequences of the mistrial and that they resulted in an indictment for a higher felony and resulted in a lengthier sentence. The State submits that Petitioner's complaint with regard to the mistrial is not subject to post-

conviction relief because it is not relief from a judgment in a single trial or proceeding, as required by Tennessee Code Annotated section 40-30-104(c). Additionally, the State argues that the post-conviction court properly determined Petitioner failed to show ineffective assistance of counsel.

The post-conviction court determined that trial counsel's request for a mistrial in the face of a superceding indictment was not deficient where trial counsel "presumed his client innocent based upon his conversations with his client. And he was protecting his client's rights." The post-conviction court noted that trial counsel objected on three separate occasions during testimony and that it was a "sound strategy to make such a motion for mistrial." Additionally, the post-conviction court found that trial counsel was not ineffective for failing to consult with Petitioner prior to moving for a mistrial because Appellant was described as a "bright man," and was present when the discussions about the mistrial took place, and had the opportunity to express his concern to counsel.

We note that the Post-conviction Procedure Act restricts a petition for post-conviction relief to "assertion of claims for relief from the judgment or judgments entered in a single trial or proceeding." T.C.A. § 40-30-104(c). In the case herein, the mistrial at the first trial did not result in a judgment and was a separate proceeding. The Post-conviction Procedure Act does not contemplate a collateral attack on a proceeding that did not result in a judgment. Therefore, it appears that any allegations of trial counsel's ineffectiveness in seeking and being granted a mistrial are not cognizable in a post-conviction proceeding. *Cf. State v. Andrew Neal Davis*, No. M2002-02375-CCA-R3-CD, 2004 WL 1562544, at *17 (Tenn. Crim. App., at Nashville, July 9, 2004) (commenting "that [where] Defendant's first trial ended in a mistrial without a judgment of conviction . . . . [w]hether or not the trial court should have curtailed the State's cross-examination of Dr. Harlan at Defendant's first trial is not subject to review in this appeal."). Moreover, even if Petitioner was able to properly assert the alleged ineffectiveness with regard to trial counsel's successful pursuit of a mistrial, the issue would be without merit. Counsel testified that the victim's unexpected testimony led him to make a tactical decision to seek a mistrial. Counsel testified that he weighed the pros and cons of seeking the mistrial and determined that it was the right course of action. This Court may not second-guess a reasonably-based trial strategy. *See Adkins*, 911 S.W.2d at 347. Therefore, this issue is without merit.

*II. Second Trial*

The remainder of Petitioner's claims relate to events or alleged ineffective assistance of counsel in the second trial of the matter after the issuance of the superseding indictment.

*A. Failure to Investigate and Call Witnesses*

Next, Petitioner complains that trial counsel ineffectively investigated the case. Specifically, he complains that trial counsel failed to adequately interview numerous witnesses at trial or present them at trial. Additionally, Petitioner complained that trial counsel did not call Ms. Dupree or Ms. Sanger and failed to identify and call as a witness the forensic interviewer. The State disagrees.

At the post-conviction hearing, the court heard testimony from Lisa Dupree, Maureen Sanger, Amy Dean, Dale and Eleanor Rose, Mary Dillard, Neal Davis, Patricia Foster, Amanda Rogers, and Melissa Davis. Quite a few of these witnesses testified at trial about the relationship between Petitioner and the victim. Robert Barkley was the only witness that disagreed with the general characterization of the familial relationship between Petitioner and the victim as "normal." Instead, he characterized the entire family as "contentious."

Trial counsel admitted that Petitioner gave him the names of witnesses prior to trial and was able to interview them either in person or by phone. Trial counsel noted that one of the main defense strategies at trial was to present witnesses that showed the relationship between the victim and Petitioner was normal. Trial counsel claimed that he never talked to the Roses because Petitioner did not bring them to his attention. However, trial counsel felt that any additional character testimony would have been viewed as redundant by the jury.

Ms. Sanger interviewed the victim in 2001 and Ms. Dupree conducted the forensic interview of the victim in 2006. Trial counsel testified that he had Ms. Sanger under subpoena and had talked to her on occasion prior to trial but decided not to call her after the victim's mother testified to facts that damaged the victim's credibility and these statements were consistent with statements the victim's mother made to Ms. Sanger in 2001. Trial counsel determined that Ms. Dupree's testimony would not be helpful as it would bolster the victim's credibility.

The post-conviction court heard the testimony at the hearing and determined that trial counsel was not ineffective for failing to interview witnesses for the defense or producing additional witnesses to testify both about the relationship between the victim and Petitioner and the relationship between Petitioner and his ex-wife. The post-conviction court recounted the testimony of the witnesses who testified at the post-conviction hearing and noted that many of the witnesses did, in fact, testify at trial as "character witnesses" on behalf of Petitioner. Further, some of the witnesses testified as to the "normal relationship" between Petitioner and the victim. The post-conviction court deemed it a "strategic decision" for trial counsel to determine the number of people who testified at trial and the extent of their testimony. With regard to witness Ms. Sanger, the post-conviction court specifically

determined that trial counsel made a strategic decision not to call her as a witness after determining that her testimony would be negative. Again, this Court may not second-guess a reasonably-based trial strategy. *See Adkins*, 911 S.W.2d at 347. This Court may not second-guess a reasonably-based trial strategy. *See Adkins*, 911 S.W.2d at 347. Further, Petitioner has failed to show prejudice. Petitioner is not entitled to relief.

The post-conviction court also determined that it was not ineffective for trial counsel to fail to call the forensic interviewer who interviewed the victim as a witness. The post-conviction court noted that Petitioner did not produce this witness at the post-conviction hearing and determined that trial counsel was not ineffective in this regard.

A post-conviction petitioner making a claim regarding the failure to call a witness bears a duty to present the witness at the post-conviction hearing in order to enable this Court to determine whether his or her testimony might have altered the results of the trial. *See Black v. State*, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990). Because Petitioner failed to produce such a witness at the hearing, he is not entitled to relief based on a claim that the failure amounted to ineffective assistance of counsel.

The post-conviction court also determined that Petitioner failed to meet his burden to establish that trial counsel was ineffective for failing to call an expert witness to testify about accepted methods of interviewing children about abuse. Petitioner did not produce an expert at the post-conviction hearing to show that there was anything improper about the forensic interview conducted of the victim. *See id.* Additionally, the post-conviction court noted that the videotape of the interview was never introduced at trial and there was no proof that the interviewer did anything improper. In other words, Petitioner failed to show prejudice. Petitioner is not entitled to relief on this issue.

### B. Failure to Seek Mental Health Records and Testimony of Therapist

Petitioner argues that trial counsel was ineffective for failing to subpoena the victim's mental health records and seek the testimony of the victim's therapist. Specifically, Petitioner contends that it was clear from the records produced during discovery that the victim sought mental health treatment both in 2001 and in 2006 and that trial counsel should have reviewed these records to prepare for trial and the cross-examination of the victim. At the post-conviction level, Petitioner filed a subpoena seeking to obtain the records without knowing what the records would contain. The post-conviction court quashed the subpoena on the basis that the records were privileged. Petitioner offered no other proof at the post-conviction hearing to show that the records would be beneficial to the defense or that they were otherwise discoverable.

After the post-conviction hearing, the post-conviction court determined that trial counsel made a strategic decision by not seeking mental health records for the victim. The court noted that trial counsel is "not required to try to find things that are not admissible" at trial. The post-conviction court also noted that trial counsel was not ineffective for failing to interview the therapist with whom the victim was meeting. Specifically, the post-conviction court noted that there was no proof that anyone knew that the victim was going to therapy and, in any event, the information could have been privileged. Again, this Court may not second-guess a reasonably-based trial strategy. *See Adkins*, 911 S.W.2d at 347. Moreover, Petitioner failed to show how he was prejudiced by the trial counsel's alleged deficiencies. This issue is without merit.

### C. Failure to Use Prior Recorded Statement of Victim

Petitioner complains that the post-conviction court erred in ruling that trial counsel's failure to use the prior recorded statement of the victim was not ineffective representation. Petitioner insists that the recorded statement is full of inconsistencies and would impeach the credibility of the victim.

During the investigation, the State utilized the videotape of the interview of the victim. However, the video of the victim's interview was never admitted at trial. Trial counsel testified that he did not recall any inconsistencies between the video and the testimony of the victim. Petitioner disagreed. The post-conviction court determined that trial counsel did not fail to effectively cross-examine the victim based on her prior statements about the abuse without the introduction of the videotape. Specifically, the post-conviction court referred to the videotape of the interview of the victim during which the victim expressed some "inconsistencies" with regard to her accounts of abuse. However, the court noted that the videotape also contained statements that "would bolster" the victim's testimony. In other words, the court ruled trial counsel made a strategic decision to refrain from introducing the videotape based on adequate preparation for the case.[2] Again, this Court may not second-guess a reasonably-based trial strategy. *See Adkins*, 911 S.W.2d at 347. Therefore, this issue is without merit.

### D. Failure to Object to Evidence of Other Crimes

Petitioner complains that the post-conviction court erred in denying the claim that trial counsel was ineffective for failing to object to testimony regarding evidence of other crimes not charged in the indictment. Specifically, Petitioner points to testimony of the victim

---

[2] We note that Petitioner argues that the videotape is clearly admissible under Tennessee Code Annotated section 24-7-123. However, this statute did not go into effect until July 1, 2009, after the conclusion of Petitioner's trial.

wherein she alleged that the abuse "happened all the time" and that there were "hundreds" of incidents of abuse. The post-conviction court determined that this issue "could have been brought up on appeal" and, in any event, does not go to ineffective assistance of counsel. We agree. If a petitioner for post-conviction relief fails to present a ground for relief to a court of competent jurisdiction, the petitioner has waived that ground for relief. *See* T.C.A. § 40-30-106(g). This issue is waived.

### E. Cross-examination of the Victim's Mother

Petitioner claims that trial counsel failed to adequately prepare for the cross-examination of the victim's mother. Specifically, he insists that trial counsel did not ask the right questions to show the hostility that existed between the victim's mother and Petitioner that would give her the motive to fabricate the allegations of abuse.

At the hearing, the proof showed that trial counsel was made aware of the problems in the relationship between Petitioner and the victim's mother as trial counsel was the divorce attorney. Further, trial counsel testified that he even took the victim's mother's deposition in conjunction with the divorce proceedings. The post-conviction court determined that there was no proof that trial counsel did a poor job of cross-examining Susan Stoner. We agree. The record reflects that trial counsel prepared for trial and adequately questions the victim's mother. Petitioner does not show clear and convincing evidence that the cross-examination of Susan Stoner at trial resulted in prejudice. This issue is without merit.

### F. Failure to Object to Introduction of Video

Petitioner complains that trial counsel failed to object to the admission of his video-recorded statement to police. The post-conviction court determined that trial counsel was not ineffective for failing to object to the State's introduction of the video interview because the video was never introduced at trial. Petitioner has failed to show how trial counsel's failure to object to something that never happened prejudiced him at trial. This issue is without merit.

### G. Failure to Object to Inappropriate Witness Conduct During Trial

Petitioner insists that trial counsel was ineffective for failing to address inappropriate gesturing by a detective during the testimony of the victim. Specifically, Petitioner claims that trial counsel should have requested a curative instruction when a juror allegedly noticed Detective Dean shaking her head during the victim's testimony.

At the post-conviction hearing, Detective Dean testified that she was not shaking her head or signaling the witness. The post-conviction court determined that trial counsel was not ineffective for failing to address allegedly inappropriate conduct by a detective in the presence of the jury, specifically when the detective "shook her head." The post-conviction court noted that the trial court was notified and the jury was admonished. Petitioner complains that trial counsel should have requested a curative instruction, but the post-conviction court found that the failure to do so did not "fall[] below the standard of doing a good job as an attorney." No jurors testified at the post-conviction hearing. A post-conviction petitioner making a claim regarding the failure to call a witness bears a duty to present the witness at the post-conviction hearing in order to enable this Court to determine whether his or her testimony might have altered the results of the trial. *See Black v. State*, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990). Because Petitioner failed to produce such a witness at the hearing, he failed to show that he was prejudiced by the failure of trial counsel to seek a curative instruction. This issue is without merit.

### *H. Failure to Provide Our Kids Report*

The post-conviction court denied Petitioner's claim with regard to the argument that the State failed to provide the report from DCS or Our Kids. At the post-conviction hearing, trial counsel initially claimed that he did not receive the report. However, upon review of the record, it appears that the State provided the report to defense. Therefore, there can be no error. This issue is without merit.

### *I. Cumulative Error*

Lastly, Petitioner insists that cumulative errors require a reversal of the post-conviction court's denial of post-conviction relief. Because we have determined that Petitioner is not entitled to post-conviction relief, this issue is without merit.

### *Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-18-